*Law Offices of Heather J. Mattes*
105 South High Street, Suite 2A
West Chester, Pennsylvania  19382
Telephone: (610) 431-7900
Attorney Identification: 42364
BY: Heather J. Mattes

---

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| V. | : | CRIMINAL NO. 13-191-1 |
| CORI MERKLINGER | : | |

**DEFENDANT'S MEMORANDUM WITH REFERENCE TO USSG § 2G2.2(C) AND AMENDED GUIDELINE CALCULATION**

**I. INTRODUCTION AND BRIEF PROCEDURAL HISTORY**

Cori Justin Merklinger is before the court for sentencing. The sentencing hearing began on April 29, 2015, with testimony from Dr. Elliot L. Atkins and Agent Christopher Duncanson of the FBI. Thereafter, the Court began counsels' arguments concerning application of sentencing guideline provisions and objections to the Presentence Report, (hereinafter, PSR) to determine the applicable guideline range in accordance with *United States v. Gunter* and sentencing procedure generally.

The Government objected to the PSR's failure to apply 18 U.S.C.A. § 2G2.2(c)[1] cross reference to Count Five (Distribution) based on the "overall offense." After the submission of the final PSR, the Federal Probation Officer endorsed the Government's interpretation. Defense

---

[1] Cross reference§ 2G2.2(c)(1): If the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct or for the purpose of transmitting a live visual depiction of such conduct, apply § 2G2.1 (Sexually Exploiting a minor by Production of Sexually Explicit Visual or Printed Material; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertisement for Minors to Engage in Production), if the resulting offense level is greater than that determined above."

1

counsel objected to application of the cross reference. At the sentencing hearing after argument on the issue, the Court continued the sentencing hearing and ordered memoranda.

## II. CROSS REFERENCE USSG § 2G2.2(C) DOES NOT APPLY: THE PRODUCTION COUNTS 1-4 ARE NOT RELEVANT CONDUCT FOR COMPUTING THE GUIDELINE AT§ 2G2.2.

The first step in determining the sentence is identifying the applicable guideline based on that "offense of conviction."[2] Relevant conduct for each guideline is, as the court knows, outlined in USSG § 1B1.3 and is not the same in every case.[3] The general rule states specific offense characteristics are determined based on "all acts and of missions committed aided, abetted, counseled, commanded, induced procured or willfully caused by the defendant. However, USSG § 1B1.3(a)(1)(A) does not justify repeatedly applying the same facts across Guidelines without limitation. In the current case, Counts One-Four are closely related and would otherwise be grouped under § 1B1.3(a)(2). Principles of relevant conduct apply: "For an act to qualify as relevant conduct under § 1B1.3(a)(2), three conditions must be met: "(1) it must be the type of conduct described in § 1B1.3(a)(1)(A) and (B) ('all acts and omissions committed ... by the defendant'); (2) grouping would be appropriate under § 3D1.2(d);[4] and (3) it must have been 'part of the same course of conduct or common scheme or plan' under § 1B1.3(a)(2)." *United States v. Blackmon,* 557 F.3d 113, 123 (3d Cir.2009). Cited in *United States v. Kulick,*

---

[2] In determining the applicable guideline, USSG 1B1.1(a)(1) requires one to "determine pursuant to 1B1.2 the offense guideline section from Chapter Two (offense conduct) applicable to the *offense of conviction.* See 1B1.2." (Emphasis added). Section 1B1.2 (a) instructs: "Determine the offense guideline section in Chapter Two (offense conduct) applicable to the *offense of conviction* (i.e. the offense conduct charged in the count of the indictment or information of which the defendant was convicted)." (Emphasis added)

[4] 3D1.2 Groups of Closely Related Counts (d): "When the offense level is determined on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." The offense conduct in Counts One-Four was ongoing and in nature and would otherwise fall under 3D1.2. See USSG 3D1.2 comment (n. 9 (B): "Offenses that do not qualify as a part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree or ongoing series of offenses." Count Five is easily distinguishable from Counts One-Four.

2

629 F.3d 165, 170-71 (3d Cir. 2010) holding that the defendant's extortion was not relevant conduct in determining the sentencing guideline offense level for unlawful possession of a firearm by a convicted felon). The offense conduct in Count Five is materially different from Counts One-Four. None of the victims in the first four Counts was in the Distribution group.[5] The government candidly acknowledges other differences between the two groups of offenses that establish the conduct for Counts One-Four is not relevant in determining the guideline score for Count Five: "while the production was another act committed by the defendant, it would be difficult to assert that it occurred during the commission of the distribution (the events were distinct in time), or that the production was in preparation for the distribution or to avoid detection for the distribution."[6] The distribution offense was not in furtherance of or part of the course of conduct, the common scheme, plan or design as the first four Counts. In consideration of these factors, it is clear the offense conduct in Counts 1-4 is not relevant conduct for purposes of determining Specific Offense Characteristics in Count Five.

It makes sense that this is so, since doing otherwise results in repeatedly applying the same conduct to different offense characteristics between Guidelines. In this case, the defendants' acts and the consequent harms related to production and conspiracy in Counts One-Four are relevant conduct applicable to the offenses of conviction under USSG § 2G2.1. The facts are counted against the defendant in the individual Counts and in the conspiracy Count for specific offense characteristics. They should not apply again under § 2G2.2 to the unrelated Count Five. It is suggested this is why no cases could be located applying the USSG § 2G2.2(c) cross reference to an unrelated offense charged in the same indictment: the conduct was not relevant since all of its aspects were otherwise accounted for under a different Sentencing

---

[5] Change of plea memorandum, p. 5
[6] Government Supplemental Sentencing Memorandum, p. 2.

Guideline.[7] "Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Matos-Rodriguez,* 188 F.3d 1300, 1309 (11th Cir.1999) (internal citation omitted). The repeated application of the same conduct and harm to unrelated Guidelines, as suggested by the government, has this effect.

### III. ENGAGING IN A PATTERN OF ACTIVITY OF EXPLOITATION OF MINORS § 2G2.2(B)(5) IS INAPPLICABLE.

Having conceded the base offense level for Count Five is 22, the government seeks to substitute a five level enhancement to USSG § 2G2.2 based on a pattern of activity.[8] As the Court knows, "[t]he burden is on the government to prove guideline enhancements by a preponderance of the evidence." *United States v. Shackelford,* 331 F. App'x 911, 913 (3d Cir. 2009). The enhancement should not be applied.

If the government seeks to enhance USSG § 2G2.2(b)(5) based on the convictions for Counts One-Four, the same argument is apposite: the conduct accounted for under USSG § 2G2.1 in Counts One-Four is not relevant in determining offense conduct in § 2G2.2. Using the same facts, as offense conduct under USSG § 2G2.1 subject to all enhancements applicable

---

[7] For the same reason, in the cases proffered to the court for the correct application of the § 2G2.2(c) cross reference the 'involved conduct" was *not* otherwise accounted for by the application of § 2G2.2. *U.S. v. Starr*: 486 F. Supp. 940 N.D. Iowa (2007) [The defendant was convicted of Child exploitation and possession and receipt of child pornography. Because the defendant had caused the subject pornography's production, application of § 2G2.2(c) was upheld. *U.S. v. Castro-Valenzuela:* 304 Fed. Appx. 986 (3d Cir. Dist. NJ 2008) [the defendant made a pornographic movie in Chile and brought it to the U.S. He pled to transporting child pornography 18 U.S.C.A. 2252(a)(1). The application of § 2G2.2(c) was upheld: "the cross reference serves merely to distinguish [Castro Valenzuela] from the defendant who did not personally exploit minors to create the pornography found in his possession." Id. at 992 citing *U.S. v. Dawn,* 129 F.3d 878, 884 (7th Cir. 1997).

[8] § 2G2.2(b)(5) "If the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by 5 levels."

under that guideline and again as an enhancement under USSG § 2G2.2(5) would be double counting.[9]

Moreover, should the court find the offense conduct under Counts One-Four relevant conduct for a pattern of child exploitation in Count Five, it creates another issue in calculating the sentencing Guidelines: the offenses would all be grouped together under USSG § 3D1.1. USSG § 3D1.2(c) provides for grouping separate counts together, "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in or other adjustment to, the guideline applicable to another of the counts." The policy for grouping is as stated above to prevent double counting.[10] Offenses under USSG § 2G2.1 are specifically excluded from grouping under USSG § 3D1.2. Offenses under § 2G2.2 are included in the Guideline. It does not address cases where offenses under USSG § 2G2.1 are specific offense characteristics for offenses under USSG § 2G2.2. In *U.S. v. Walpole*, 543 Fed.Appx. 224 (3rd Cir.2013), however, a defendant was convicted of Exploitation and Distribution. The sentencing court enhanced the guideline under § 2G2.2(b)(5) based on the defendant's uncharged sexual activity with his

---

[9] Even related conduct will not always sustain a guideline enhancement:
> In *Harrison,* the defendant pled guilty to transporting child pornography in violation of 18 U.S.C. § 2252(a)(1). The district court applied a two-level enhancement because "a computer was used for the transmission of the material." U.S.S.G. § 2G2.2(b)(5). Based on the specific facts of that case, we held that the enhancement was properly applied because the conduct fell squarely within § 2G2.2(b)(5). *Id.* at 319. In dicta, we referenced *Baird* for the proposition that if a defendant pleads guilty to one offense, a lesser offense that is a necessary element of the larger offense may be related conduct, even if it does not fit the Guidelines definition in § 1B1.3. *Id.* at 320. Accordingly, we noted that Harrison's downloads of pornography were related conduct because "[i]f Harrison had not downloaded the images, he could not have trafficked in them, and the two actions are therefore closely tied." *Id.* The dicta in *Harrison* cannot properly be read to suggest that related conduct can always sustain an enhancement, and it does not do so here.

*United States v. Kulick*, 629 F.3d 165, 174 (3d Cir. 2010) fn. 7.

[10] USSG §3D1.2, comment. (n.5): Subsection (c) provides that when conduct that represents separate count…is also a specific offense characteristic in or other adjustment to another count, the count represented by that conduct is to be grouped with the count to which it constitutes an aggravating factor. This provision prevents "double counting" of offense behavior."

5

younger brother years prior rather than the exploitation count he was sentenced for contemporaneously. The Third Circuit upheld that portion of the guideline calculation.

Further, despite USSG §2.2G(5), comment (n. 1)'s reference to "whether or not the abuse or exploitation occurred during the course of the offense," cases rely on prior, even remote, events for the enhancement: See *United States v. Gawthrop,* 310 F.3d 405, 414 (6th Cir.2002) ("Nothing in § 2G2.2(b)(4) or its current commentary requires a temporal nexus between any instances of sexual abuse or exploitation."); *United States v. Woodward,* 277 F.3d 87, 90–92 (1st Cir.2002) (holding that incidents of sexual abuse that occurred from 1974–1978 could establish a pattern of activity for purposes of sentencing in 2001); *United States v. Lovaas,* 241 F.3d 900, 903–04 (7th Cir.2001) (rejecting defendant's argument that "the decades-old instances of sexual misconduct upon which the district court relied are not relevant conduct [.]"). Cited in *United States v. Olfano*, 503 F.3d 240, 243 (3d Cir. 2007)

Finally, the "pattern of activity" five-level enhancement was a congressional directive to the USSC through congressional amendment in 1991. The reason for the amendment was to address "dealers in pornography."[11] It was not promulgated pursuant to the USSC's statutory charter. Therefore, as discussed in the Defense Memorandum in Aid of Sentencing, the Court should consider the effect of the specific offense characteristic on USSG § 2G2.2 and reduce the weight it accords the guideline even under *Booker*.

Because all of the conduct, harms and consequences are addressed separately in a different guideline, the conduct is neither related nor relevant, and the sentencing concern is the same under both Sentencing Guidelines, the court should not apply the 5 level enhancement the

---

[11] Amendment 780, the Helms-Thurmond Amendment to the Treasury–Postal Appropriations Bill, Pub.L. 102-41. The process is discussed in the Defense Memorandum in Aid of Sentencing on pp. 15-17. It is also discussed at pages 20 and 29.

Government seeks. Alternatively, should the court apply the enhancement, it will need to resolve a grouping question and should vary downward based on the enhancement's lack of basis in the USSC's institutional role to develop Sentencing Guidelines based on national experience, data and expertise.

IV. SENTENCING GUIDELINE CALCULATIONS AND OBJECTIONS (AMENDED)

The Guideline calculations and defense arguments concerning them from the sentencing memorandum Addendum filed April 30, 2015, are consolidated and amended hereunder.

A. PRODUCTION: USSG 2G2.1 Objections to Enhancements

In calculating the adjusted offense level under 2G2.1 the defense objects to 2G2.1(b)(3)[the offense involves distribution].[12] The only distribution in the offenses was from Ambur Ham to Cori Merklinger making the enhancement applicable linguistically but not under the intended purpose of the specific offense characteristic. If the Court finds the enhancement applies, the limited nature of the distribution takes it out of the heartland of production offenses to which the enhancement applies. The court should depart or vary or downward to address this factual aspect not considered in the guideline calculation. As well, "transmission by any means, including computer" is an element of the offense. Therefore, the distribution enhancement impermissibly double counts against the defendant for an aspect that is considered in the base offense level.

2G2.1(b)(6): The use of computer enhancement under as applied to the means of communication by texting (Counts One and Four) or smartphones (Counts Two and Three) is overbroad. The specific offense characteristic addresses the use of computers to entice minors and custodians

---

[12] Defense Sentencing Memorandum, p. 30 addresses the history of the use of computer enhancement and distribution by Amendment 664.

inclined to engage in production offenses rather than incidental use between codefendants engaged in an ongoing course of conduct. The enhancement was added pursuant to a congressional directive aimed at those broadly distributing child pornography using computers. by Amendment 537.[13] The enhancement's mere linguistic application to the case removes it from the heartland of cases to which the enhancement applies and the court should depart or vary or downward based on that fact if it applies the enhancement to the guideline calculation.

    B. § 2B2.2: DISTRIBUTION: Objections to Guideline Enhancements.

As discussed in the Defense Memorandum in Aid of Sentencing, the Sentencing Commission and "most stakeholders in the federal criminal justice system consider the non-production sentencing scheme to be outmoded."[14] The defense objections to several specific offense characteristics illustrate the Guideline's flaws as discussed in the Defense Memorandum.

2G2.2(b)(2): [Minor < 12] The defense stipulates this offense characteristic applies as it did to 96% of subject offenders in 2013.[15] The specific offense characteristic does not differentiate between offenders, however, and serves only to automatically enhance sentences of all offenders.

2G2.2(b)(3)(F): [Catchall provision]. As stated in the Defense Sentencing Memorandum at pp.21-22, USSG App. C Amendment 592 included the catchall provision absent explanation or legitimate policy basis related to the purpose of the enhancement generally. It is inherent in the offense and should not be applied.

---

[13] The Sex Crimes Against Children Prevention Act of 1995 discussed in the Defense Sentencing memorandum at pages 17-18.

[14] USSC 2013 Annual Report to Congress, Chapter 2 p. A-8.

[15] Defense Exhibit 6 admitted into evidence on April 29, 2015.

2G2.2(b)(5): Pattern of Activity. The government has not stated its basis for believing this specific offense characteristic applies. The reasons not to apply this enhancement are discussed above.

2G2.1(b)(6): Use of Computer. As discussed in the Defense Sentencing Memorandum at pages 19-20, 28-29, the specific offense characteristic applies to virtually every case. The Department of Justice has recommended it be discarded (in favor of other characteristics). in 2013, the SOC was applied in 95% of cases. The characteristic does not distinguish between offenders and is inherent in the offense. It should therefore not be applied.

2G2.2(b)(7)(C): Number of images >600. The defense stipulates under the Guidelines there are more than 600 images. As discussed in the Defense Sentencing Memorandum, at pages 29-30, the number of images enhancement lacks a rational basis. Section 401(i)(C) of the PROTECT ACT directly amending the Sentencing Guidelines did not provide for video images. The USSC in USSG App. C Amendment 664 chose 75 images per video because it is between 10 and 150 images as directed by Congress. The fact the number of images in this case exceeded 600 images in nine videos illustrates how quickly the maximum enhancement applies. In an internet age, the enhancement fails to distinguish between offenders but does apply to this defendant and 79% of other offenders in 2013. The court should depart or vary downward in light of its overstatement of the defendant's conduct and the amendment's lack of basis in the USSC's traditional institutional role.

  C. Suggested Sentencing Guideline Calculation

  1. **2G2.1** Suggested Guideline Calculation:

  2G2.1(a)Base Offense level:              32
  Specific Offense Characteristics:
  2G2.1(b)(1)(A) Minors < 12 yrs.             +4
  2G2.1(b)(3) Distribution (+2)             n/a

| | | |
|---|---|---:|
| 2G2.1(b)(6)(B) Use of computer (+2) | n/a | |
| COUNT 1 & 2 | | 36 |
| COUNT 3 | | 36 |
| COUNT 4 | | 36 |
| Adjusted Offense Level (subtotal):   CT 1-4 | | **36** |

2. <u>18 U.S.C.A. 2252, Distribution</u>:   USSG § 2G2.2   COUNT 5

| | | |
|---|---|---:|
| 2G2.2(a) Base Offense Level: | | 22 |
| 2G2.2(b)(2) Minor <12 | | +2 |
| 2G2.2(b)(3)(F) Distribution (catchall) (+2) | n/a | |
| 2G2.2(b)(4) S&M | | +4 |
| 2G2.2(b)(5) Pattern of Activity (+5) | n/a | |
| 2G2.1(b)(6) Use of Computer(+2) | n/a | |
| 2G2.2(b)(7)(C) NUMBER of IMAGES.>600 | | +5 |

| | |
|---|---:|
| TOTAL FOR 2G2.2 | **33** |
| (Total for § 2G2.2 if the court applies the pattern of activity | (38) |
| Highest offense level: | **36** |
| (Highest offense level if the court applies the pattern of activity | (38) |

Grouping

➕ GROUPING I: Grouped according to 3D1.1 or 3D1.2   [If the court applies Pattern of activity]

| | | |
|---|---|---:|
| Counts 1-4 | 36 | |
| Count 5 | 38 | |
| 2 units: | | +1 |
| Grouped Combined offense level | | 39 |

➕ GROUPING II: Under the required exclusion for offenses under Chapter 110.

[If the court does not apply pattern of activity]

| | | | |
|---|---|---|---|
| Counts 1-4 | 36 | | |
| | 36 | | |
| | 36 | | |
| Count 5 | 33 | | |
| 36: highest score + 3 [3D1.4(a)] = 4 units | | | +4 |
| | Non Grouped combined offense level | | 40 |
| Adjustments | Acceptance of Responsibility | | -2 |
| | Assisted Authorities | | -1 |
| Total Adjusted Offense Level with grouping: | | | 36 |
| Total Adjusted Offense Level without grouping | | | 37 |

**18 U.S.C.A. 3553(a)(4) The Kinds of Sentence and the sentencing range (Restated)**

Federal Probation, the Assistant U.S. Attorney and Defense counsel, have variously calculated the suggested sentencing guideline ranges. The defendant is first offender whose conduct deserves substantial punishment; however, the guideline calculations cannot be said to fulfill the directive of being "sufficient, but not greater than necessary" to accomplish retribution, deterrence and rehabilitation. Rather, they remind the court it may not presume the guideline range is reasonable but "must make an individualized assessment based on the facts presented." *Gall v. United States*, 128 S. Ct. 586 at 597. In Cori Merklinger's case all those facts point to the mandatory minimums.

Respectfully Submitted,

_____
Heather J. Mattes
Attorney for Cori Merklinger

## Certificate of Service

I hereby certify that I am this day serving the foregoing document upon the following persons by the following means: Electronic Case Filing and email.

The Honorable James Knoll Gardner
U.S. District Court, ED of PA
U.S. Courthouse
504 W. Hamilton Street
Suite 4701
Allentown, PA 18101

Michelle Morgan
U.S. Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(610) 434-3457

Robert C. Patterson
434 Cattell Street,
Easton, PA 18042

Clerk's Office
U.S. District Court, ED of PA
2609 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1797

Date: May 13, 2015

Heather J. Mattes, Esquire
105 South High Street, Suite 2A
West Chester, PA 19382-1008
Attorney Identification 42364